UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
HENRY CABEZUDO,

                          Petitioner,          <u>MEMORANDUM & ORDER</u>
                                               05-CV-3168 (JS)
          -against-

BRIAN FISCHER, Superintendent, Sing
Sing Correctional Facility,

                          Respondent.
----------------------------------X
APPEARANCES:

For Petitioner:     Henry Cabezudo, <u>pro</u> <u>se</u>
                    01-A-0720
                    Sing Sing Correctional Facility
                    354 Hunter Street
                    Ossining, New York 10562

For Respondent:     Glen Green, Esq.
                    District Attorney's Office, Suffolk County
                    200 Center Drive
                    Riverhead, New York 11901

SEYBERT, District Judge:

          On June 23, 2005, Henry Cabezudo ("Petitioner"),

proceeding <u>pro</u> <u>se</u>, filed a petition seeking a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  On April 16, 2007, Petitioner moved

to stay the proceedings so that he could present new arguments in

state court.  This Court granted the stay on October 29, 2007.

Petitioner filed his amended habeas petition on October 17, 2008.

For the reasons stated below, Petitioner's application is DENIED.

                          <u>BACKGROUND</u>

          Petitioner Henry Cabezudo attacks a conviction entered

against him in the Supreme Court of the State of New York, Suffolk

County, on November 23, 1999.

On May 14, 1999, Anne Mazza arrived at work to begin her day as office manager of the Nassau Insurance Company, 1716 Sunrise Highway, Bay Shore, Suffolk County. At approximately 11:30 a.m., Ms. Mazza first encountered Petitioner; while she was on the phone, Petitioner entered Ms. Mazza's office. As she looked at him for some time, Petitioner stared back. Eventually, Ms. Mazza asked Petitioner whether she could help him with anything. Petitioner replied, "Oh, shit" and left the office.

Ten minutes later, Petitioner returned to Ms. Mazza's office, wearing the same clothes, not wearing any disguise, and carrying a gun. As Ms. Mazza was talking on the phone, Petitioner came up to her desk, pointed the gun at her face and told her to hang up the phone. After screaming, Ms. Mazza hung up, and complied with Petitioner's instructions to get on the floor.

Once Ms. Mazza was on the floor, Petitioner demanded money. Ms. Mazza opened her desk, and gave Petitioner a hidden envelope of cash.[1] After receiving the envelope, Petitioner became angry at its size – it was small and did not appear to have a lot of money in it. At trial, Ms. Mazza estimated that there was about $570 cash in the envelope, mostly in denominations of $10 and $20 bills, along with two checks. Ms. Mazza pleaded with Petitioner,

---

[1] It is unclear exactly who grabbed the envelope. In her trial testimony, Ms. Mazza stated that she opened the drawer and handed Petitioner the envelope. In her statement to detectives, however, she stated that Petitioner reached into the drawer and removed the envelope.

telling him that it was all she had, and begging him not to hurt her because she had kids.

After rifling through Ms. Mazza's desk drawers – to make sure she was telling the truth about the money – Petitioner demanded her car keys to ensure she did not follow him when he left. Ms. Mazza assured Petitioner she would not follow him, and she also pleaded with him not to take her car. After hesitating for a moment, Petitioner slowly backed out of the office and left. Throughout this ordeal, Ms. Mazza looked at Petitioner's face. After Petitioner left, she hit the silent alarm.

Police Officer John Gagliano was the first to respond. Upon his arrival, after ascertaining that no danger remained, Officer Gagliano found a shaken and crying Ms. Mazza. Soon, Police Officer Charles Mortimer and Detective Theodore Severino arrived to assist Officer Gagliano. The officers and detective were able to coax Ms. Mazza into describing what happened, and obtained a description of the perpetrator.

Later that day, detectives took Ms. Mazza to view a man that was caught a few blocks away from her office to see if he was the perpetrator. When she arrived, Ms. Mazza told the police that the man was not the same one who had robbed her.

The following day, on May 15, 1999, Officer Mortimer and his partner were at a 7-Eleven in Bay Shore, New York. While his partner was getting a soda, Officer Mortimer observed two men

standing at the train station, one of whom he knew. The other man, however, fit the physical description of the robbery suspect from National Insurance. After his partner returned, Officer Mortimer apprised him of the situation, and they approached the two men. After approaching the men, the officers asked the men for identification. The unknown man who fit the robber's description was Petitioner Henry Cabezudo.

After Petitioner identified himself, Officer Mortimer asked him some questions. During this time Petitioner was nervous and jumpy. The officers then asked the men if they would consent to a search. After consenting, the officers found crumpled up bills in Petitioner's pockets. At some point, Petitioner turned to the other man, his cousin, and said "Let's get out of here."

On May 24, 1999, Detective Severino visited Ms. Mazza's office. He handed her a folder of photographs and asked her to point out if any of the photographs resembled the person who had robbed her. Ms. Mazza picked Petitioner's picture a few seconds after opening the photo array.

Officer Mortimer arrested Petitioner on May 31, 2009 at his home, and brought him to the Third Precinct. The following day, on June 1, 1999, Ms. Mazza went to the Third Precinct to view a lineup. Viewing the first lineup, Ms. Mazza identified Petitioner as the robber after a few seconds. Then, after reshuffling the lineup participants, Ms. Mazza again picked

Petitioner out of the second lineup. After suppression hearings were held, the trial court held that neither the lineups nor photo array were unduly suggestive and that there was no police misconduct.

At trial, Petitioner attempted to establish an alibi defense. Petitioner's brother, David Cabezudo ("David"), is a truck owner-operator employed by Sears. Two weeks after Petitioner's arrest, David came forward and said that Petitioner was helping him with deliveries when the robbery occurred. To support his story, David submitted a form listing Petitioner as a helper on May 14, 1999. But a truck manifest from the same day listed John Rodriguez, David's regular helper, as the delivery person who accompanied David.[2] Additionally, the standard paperwork completed following a delivery – or in this case a failed delivery – also listed Mr. Rodriguez and David on May 14, 1999.

Petitioner was convicted of one count of Robbery in the First Degree, N.Y. Penal Law § 160.15 and sentenced, as a persistent violent felony offender, to life in prison, with a minimum of twenty-years incarceration.

On appeal, Petitioner raised five issues: (1) the trial court erred by failing to suppress Officer Mortimer's testimony regarding his encounter with Petitioner on the day after the

---

[2] May 14, 1999 was a Friday, a day Mr. Rodriguez usually worked with David. Petitioner normally helped his brother on Saturdays.

robbery; (2) the trial court should have granted a mistrial when the jury was briefly brought out in Petitioner's absence; (3) Petitioner received ineffective assistance of counsel; (4) the prosecutor's closing argument was improper and prejudicial; and (5) the cumulative errors at trial were not harmless.

The Appellate Division, Second Department affirmed Petitioner's conviction. People v. Cabezudo, 303 A.D.2d 596, 756 N.Y.S.2d 490 (App. Div. 2d Dep't 2003). The Second Department held that Petitioner's claims were without merit. As to the claim of ineffective counsel, the court held that defense counsel "pursued a misidentification defense, which he buttressed with an alibi defense . . . effectively cross-examined witnesses, made cogent and consistent arguments on summation, and filed various . . . motions . . . ." Id. Petitioner sought leave to appeal to the New York Court of Appeals on April 2, 2003, which was denied on September 15, 2003. See People v. Cabezudo, 100 N.Y.2d 618, 799 N.E.2d 624, 767 N.Y.S.2d 401 (2003).

Petitioner filed a Motion to Vacate Judgment in County Court, Suffolk County, on August 17, 2004, on the grounds of newly discovered evidence and ineffective assistance of counsel. The County Court, on October 27, 2004, denied Petitioner's motion because the evidence was not newly discovered, and the arguments concerning counsel's competency were rejected on appeal. The County Court denied Petitioner's motion for reargument on December

6

23, 2004. Petitioner then filed a motion for leave to appeal the October 27, 2004 decision, which the Appellate Division, Second Department denied on March 15, 2005.

Petitioner filed his original petition for a writ of habeas corpus on June 23, 2005. Petitioner's filing consisted of a resubmission of Petitioner's Appellate Division brief, including all state-court captions. The issues raised were, thus, identical to those raised in the Appellate Division. Petitioner then moved to stay the petition on April 16, 2007 to return to state court and exhaust additional claims. This Court granted the stay on October 29, 2007.

Petitioner then filed a motion for a Writ of Error Coram Nobis in the Appellate Division, Second Department claiming ineffective assistance of appellate counsel. The Appellate Division denied Petitioner's application on May 13, 2008. People v. Cabezudo, 52 A.D.3d 814, 856 N.Y.S.2d 866 (App. Div. 2d Dep't 2008). Thereafter, the New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Cabezudo, 11 N.Y.3d 786, 896 N.E.2d 98, 866 N.Y.S.2d 612 (2008).

On October 17, 2008, Petitioner returned to this Court and filed an amendment to his habeas petition. In addition to the earlier claims, Petitioner now also alleges that appellate counsel was ineffective because: (1) appellate counsel failed to preserve and raise on direct appeal trial counsel's failure to investigate

and present exculpatory evidence relating to a potential alibi witness; (2) appellate counsel failed to preserve and raise on direct appeal trial counsel's failure to use legal citations in his C.P.L. § 330.30 motion; (3) appellate counsel failed to identify which constitutional violations occurred when counsel filed a leave application in the New York Court of Appeals; and (4) appellate counsel failed to argue an actual innocence claim.

DISCUSSION

I.   <u>Federal Habeas Review of State Convictions</u>

Petitioner filed this action after April 24, 1996, the effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. <u>Williams v. Taylor</u>, 529 U.S. 362, 402, 120 S. Ct. 1479, 1518, 146 L. Ed. 2d 389 (2000). Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." <u>Cotto v. Herbert</u>, 331 F.3d 217, 231 (2d Cir. 2003). "A state court

adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." <u>Howard v. Walker</u>, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (internal quotations and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Penry</u>, 532 U.S. at 792. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be

unreasonable." <u>Williams</u>, 529 U.S. at 411.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1). As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence."  <u>Id.</u> This is "particularly important when reviewing the trial court's assessment of witness credibility."  <u>Cotto</u>, 331 F.3d at 233 (internal citations and quotations omitted).

## II. <u>Petitioner's Claims</u>

### A. <u>The Trial Court did not Err in Failing to Suppress Officer Mortimer's Testimony</u>

#### 1. <u>Rights Under the Fifth Amendment</u>

Petitioner argues that his Fifth Amendment right to remain silent was violated when Officer Mortimer provided testimony detailing his conversation with Petitioner on May 15, 1999. According to Petitioner, the trial court should not have permitted Officer Mortimer to testify that he found money in Petitioner's pocket, Petitioner appeared nervous and in a hurry, and that Petitioner said, "Let's get out of here."

On appeal, the Appellate Division held, "[t]o the extent that the claim is preserved, we find no error in the suppression ruling, nor do we find that certain statements admitted at trial violated any prior ruling by the County Court."  <u>People v. Cabezudo</u>, 303 A.D.2d 596 (N.Y. App. Div. 2d Dep't 2003).  The Court finds that the Appellate Division did not err.

To the extent that Petitioner maintains that the trial court's ruling violated Petitioner's Fifth Amendment Right to remain silent, the Court rejects this argument and finds that the trial court did not violate Petitioner's right against self-incrimination.

The self-incrimination clause provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. "[I]n Miranda, the Court concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated." United States v. Patane, 542 U.S. 630, 639, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004). "To protect against this danger, the Miranda rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief." Id.

Miranda warnings are only required when a person is "in custody." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (emphasis supplied)). And custodial interrogation is defined as "questioning initiated by law

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.

To determine whether a person is "in custody" for Miranda purposes, two discreet inquiries are required. Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003). First, courts must consider "the circumstances surrounding the interrogation." Thompson v. Keohane, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995). This is a pure issue of fact, see Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998), and courts must presume that the state court's findings are correct. See 28 U.S.C. § 2254(e)(1). The second inquiry looks at whether, under the circumstances, a reasonable person would have felt "at liberty to terminate the interrogation and leave." Thompson, 516 U.S. at 112-13. This is a mixed question of law and fact, and qualifies for de novo review by the habeas court. Tankleff, 135 F.3d at 243.

Here, police officers observed Petitioner and his cousin standing outside a train station the day after the robbery. Since Petitioner fit the description of the man suspected of robbing the insurance company, the officers sought to obtain the men's identities. After obtaining the identities, the officers questioned the men further: whether they were there to pick up drugs, and whether they would consent to a search. Following consent, the search of Petitioner turned up crumpled cash, which

12

Petitioner said came from a job. After demonstrating nervousness, Petitioner said to his friend, "Come on Nicky. Let's get out of here."

Petitioner was not "in custody" for <u>Miranda</u> purposes. A reasonable person in Petitioner's circumstances would have felt at liberty to terminate the encounter and leave. Petitioner and his cousin were not restrained in any way. They were standing on the sidewalk while being questioned. At no time were they placed in handcuffs, nor were they ever told they could not leave. Once Petitioner decided to leave, he did so freely. His own actions demonstrate that he felt at liberty to terminate the encounter and depart. As a result, Petitioner was not "in custody" for <u>Miranda</u> purposes. Because Petitioner was not "in custody", it was not a violation of his Fifth Amendment rights for prosecutors to elicit testimony on this encounter and statement. <u>See, e.g.</u>, <u>United States v. Burdett</u>, 962 F.2d 228, 230 (2d Cir. 1992) (rejecting defendant's argument that the prosecutor violated his Fifth Amendment rights by commenting on his refusal to speak with an IRS agent, because defendant was not in custody at the time).

2. <u>Right to a Fundamentally Fair Trial</u>

Petitioner further argues that the evidence admitted regarding the train-station stop was more prejudicial than probative, and deprived him of a fundamentally fair trial. The Court finds this argument lacks merit.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). A petitioner seeking habeas relief from an erroneous evidentiary ruling must demonstrate that the ruling violated an identifiable constitutional right. In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990)). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Dunnigan, 137 F.3d at 125. And "[w]here the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." Id.

Petitioner argues that the testimony describing the police officers' stop and inquiry at the train station on May 15, 1999 was prejudicial and lacked probative value. The evidence admitted – that Petitioner was nervous, had crumpled up $20 bills,

and walked away from the detectives – does have some probative value, however slight. Further, it was not so prejudicial that it violated fundamental conceptions of justice. Moreover, no reasonable doubt was removed from the record through the admission of the evidence, and thus any error in admitting this testimony was harmless. See Lyons v. Johnson, 99 F.3d 499, 502 n.5 (2d Cir. 1996) ("The instant case, involving error in evidentiary rulings, is clearly 'trial error' of the sort governed by the Brecht/Kotteakos standard."); see also Arizona v. Fulminate, 499 U.S. 279, 306-12, 111 S. Ct. 1246, 1263-66, 113 L. Ed. 2d 302, 329-33 (1991) (discussing harmless error when there is a constitutional violation). The Court therefore rejects this argument.

B.    Petitioner's Constitutional Rights were not Violated by his Brief Absence from the Courtroom

On November 22, 2009, the trial court ordered that the jury be brought into the courtroom without Petitioner's presence and over defense counsel's objection. The trial judge then proceeded to inform the jury that he was "livid this morning at this system that constantly provides delay after delay after delay." (Tr. 225). The trial judge "invit[ed] [the jury] to complain to the administration of the court system in this county and in this state for allowing the system that inconveniences and punishes civilians who are willing to perform a civic duty and sit in jury duty." Id. 226. Petitioner argues that his constitutional

rights were violated by his brief absence from the courtroom when the trial judge informed the jury of this administrative delay. This argument is meritless.

The Supreme Court has long recognized that a defendant has the privilege "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Comm. of Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L. Ed. 674 (1934); see also Faretta v. California, 422 U.S. 806, 820, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (holding that a criminal defendant has the right to be "present at all stages of the trial"). This privilege permits defendants to be present at not only the actual trial, but at proceedings that precede or occur after the trial. See Snyder, 291 U.S. at 106-7 (noting that a defendant has a right to be present during voir dire, summations, as well as certain pre- and post-trial motion hearings); see also Dixon v. Miller, 56 F. Supp. 2d 289, 300-01 (E.D.N.Y. 1999) (extending the right to be present to the sentencing stage). This right, however, is not absolute. See Illinois v. Allen, 397 U.S. 337, 342, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (refusing to hold that "a trial judge could never expel a defendant from his own trial"). For example, the privilege of presence does not necessarily extend "when presence would be useless, or [when] the benefit [is] but a shadow." Snyder, 291 U.S. at 106-7. "Thus, a

defendant's absence from a portion of his trial is reversible error only when it has a 'relation, reasonably substantial, to his opportunity to defend' himself." <u>Overton v. Laclair</u>, No. 07-CV-4599, 2009 U.S. Dist. LEXIS 75762, at *17 (S.D.N.Y. July 15, 2009) (quoting <u>Snyder</u>, 291 U.S. at 108, 54 S. Ct, at 341.

Petitioner's argument is meritless. The trial judge's purpose in calling the jury into the courtroom on the morning of November 22, 1999 was not to resume the trial without Petitioner, but rather to apologize to the jury and to explain the reason for the delay. The trial judge did not blame Petitioner in any way, and instead blamed the court system, its administration, and his own court. After explaining the source of the delay, the judge sent the jury back to the jury room to await the commencement of the day's proceedings. Thus, Petitioner's right to be present for all material stages of his trial was not violated because his presence would not have afforded him any meaningful opportunity to affect the outcome of the proceeding, and his absence had no relation to Petitioner's ability to defend himself. Petitioner's presence during the conference with Pinckney would have likely been "useless, or the benefit but a shadow." <u>Snyder</u>, 291 U.S. at 105-07, 54 S. Ct. at 332-33.

Petitioner also argues that by having everybody in the courtroom, except him, he was unfairly prejudiced in the eyes of the jury - that the jury would freely speculate that he was

incarcerated. This argument, too, is rejected.

Only rarely do a judge's interjections rise to the level of a due-process violation. Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985), cert. denied, 4379 U.S. 838, 107 S. Ct. 139, 93 L. Ed. 2d 82 (1986) ("it is abundantly clear that only infrequently does intervention by a trial judge rise to the level of a due process violation."). "The judge's intervention in the conduct of a trial must be both significant and adverse to the defense 'to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceed[s] constitutional limits.'" Gayle, 779 F.2d at 806 (quoting Daye v. Attorney General, 712 F.2d 1566, 1572 (2d Cir. 1983)). Thus, "a petitioner claiming that a judge's bias deprived him of a fair trial faces a difficult task . . . [and] a federal court will not lightly intervene when such a claim is asserted." Gayle, 779 F.2d at 806.

Petitioner has not met the high burden of demonstrating a constitutional violation. The judge's statements did not prejudice Petitioner. The trial judge's colloquy discussed court administrative issues, and problems in his courtroom. There was no discussion of Petitioner's incarceration, or Petitioner at all. The court was simply appraising the jury that there were some administrative issues, and apologized for the delay. The Court finds Petitioner's argument frivolous.

18

C.  Petitioner's Burden of Proof at Trial

Petitioner argues that the prosecution violated the Constitution by shifting the burden of proof to Petitioner.[3] Specifically, Petitioner alleges that the prosecution shifted the burden of proof on his alibi defense – and the production of documents related to that defense.  Petitioner also alleges that the prosecution, during its summation, improperly commented on the defense's failure to cross-examine witnesses on certain aspects of their testimony, and again on the alibi defense.

It is well-settled that the propriety of a prosecutor's summation generally does not present a federal constitutional violation.  See Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991); see also Dunn v. Sears, 561 F. Supp. 2d 444, 455 (S.D.N.Y. 2008).  Petitioner bears a heavy burden in demonstrating that a prosecutor's statement violated his due process rights.  Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) ("In order to grant relief, we would have to find that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights.").  For an entitlement to habeas relief, it "is not enough that the prosecutors' remarks were undesirable or even universally

_____

[3] The prosecutor's summation comment at issue is: "I will submit that these daily logs are meaningless in the face of the computerized manifests.  The defense brought in these documents. They didn't bring in these.  Both defense witnesses admitted that they in fact rely on the manifest of their account information."

condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (citation omitted). Rather, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." <u>Bentley v. Scully</u>, 41 F.3d 818, 824 (2d Cir. 1994). "Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." <u>Id.</u> In reviewing a claim of prosecutorial misconduct, the court "must assess how prejudicial the prosecutor's conduct was, what measures, if any, the trial court used to cure the prejudice, and whether conviction was certain absent the prejudicial conduct." <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991).

Petitioner's arguments lack merit. At the outset, the Court finds that the prosecutor's comments were not highly prejudicial. The prosecution is permitted to comment on a defendant's failure to refute its evidence, or failure to call witnesses to support his or her own theories. <u>United States v. Cuevas</u>, 207 F. App'x. 12, 16 (2d Cir. 2006). What is impermissible, is to comment upon the defendant's failure to testify, or to suggest that the defendant has a burden to produce any evidence. <u>Id.</u> The prosecution here did neither. While perhaps the prosecution toed the line between permissible and

impermissible comments, she only commented upon a <u>witness's</u> failure to bring subpoenaed evidence with him. The prosecution never claimed that defendant possessed a burden of proof.

Petitioner's argument that the prosecution attempted to shift the burden of proof by commenting on the defense's failure to cross-examine a witness also fails. As discussed above, the prosecution is permitted to discuss a defendant's failure to refute its evidence, and defendant's cross-examining technique. <u>See, e.g.</u>, <u>King v. Phillips</u>, No. 03-CV-6073, 2008 WL 5272505, at *5 (E.D.N.Y. 2008) (rejecting petitioner's arguments that the "possibly inappropriate comments of the prosecutor [about] defense counsel's cross-examination" entitled him to habeas relief because they were not severe enough to cause substantial prejudice).

Next, the trial court's jury instructions cured any prejudice caused by the prosecutor's statements. The trial court instructed the jury numerous times that the burden of proof rested with the prosecution, and that the attorneys' arguments on summation are not evidence and, therefore, the jury should not base its verdict on them. Thus, the trial court's jury instruction remedied any potential prejudice. <u>See</u> <u>United States v. Mapp</u>, 170 F.3d 328, 337-38 (2d Cir. 1999) (holding that a prosecutor's summation that possibly "impermissibly suggest[ed] that [defendant] has an obligation to testify or that he has any burden of proof" was not reversible error because the court's instructions removed

any prejudice).

Finally, even if the prosecutor's remarks rose to the level of misconduct, Petitioner has not demonstrated that his trial was infected with unfairness, or that the outcome of his trial would have been different absent the alleged error. The victim-eyewitness picked Petitioner out of a photo array, two lineups, and at trial. Moreover, Petitioner did not present a strong alibi witness; Petitioner's alibi witness failed to come forward as an alibi witness for two weeks, despite knowing of Petitioner's arrest, and failed to explain why Petitioner was not listed on the driver manifest for the day in question. Accordingly, the Court rejects Petitioner's allegation that the prosecutor engaged in misconduct depriving him of a fair trial.

D.     Petitioner did not Receive Ineffective Assistance of Trial Counsel

Defendants are "not entitled to a perfect defense." Wise v. Smith, 735 F.2d 735, 739 (2d Cir. 1984). To prevail on a claim of ineffective assistance of counsel, a petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies is his counsel's performance were prejudicial to his defense." Jameson v. Coughlin, No. 93-CV-2525, 1994 WL 131185, at *2 (2d Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 690, 691-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). This two-prong standard of review applies not only to a criminal defendant's trial counsel, but also

to his appellate counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).

In evaluating whether an attorney's representation has fallen "below an objective standard of reasonableness," Strickland, 466 U.S. at 688, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "Counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." Id. at 691. In evaluating the reasonableness of counsel's decisions, however, "a heavy measure of deference [is accorded] to counsel's judgments." Id. In addition, "there is no constitutional right 'to have appellate counsel raise every nonfrivolous issue that the defendant requests.'" Jameson, 1994 WL 131185, at *3 (quoting Jones v. Barnes, 463 U.S. 745, 754 n.7, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)).

The second prong of the Strickland test requires that any deficiencies in counsel's performance be prejudicial to the defense. See Strickland, 466 U.S. at 692. While a finding of prejudice is not dependent upon a showing "that counsel's deficient conduct more likely than not altered the outcome in the case," id. at 693, the claimant nevertheless must establish "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner has not shown that he received ineffective assistance of counsel. Petitioner argues that his trial counsel was ineffective because counsel "repeatedly" failed to object to hearsay evidence, allowing the impermissible bolstering of the prosecution's witnesses. But defense counsel's decisions were part of a trial strategy to highlight inconsistencies between the victim's initial description of her assailant, and Petitioner. And counsel's strategic decision to allow the introduction of hearsay evidence is not a basis for an ineffective assistance of counsel claim. See, e.g., Singleton v. Davis, 308 F. App'x. 560, 562 (2d Cir. 2009) (rejecting an ineffective assistance of counsel claim based upon a failure to object to hearsay because the decision was a strategic one, designed to highlight an inconsistency between the victim's testimony and the physical evidence).

Defense counsel here elicited the victim's description of her assailant from several witnesses, and then questioned those witnesses on whether that description matched Petitioner. For example, defense counsel pointed out that the victim described her attacker as having light brown hair, while Petitioner has dark brown hair. Even if this strategy was ill-advised, that does not make counsel ineffective. Tippins v. Walker, 77 F.3d 682, 686 (2d

Cir. 1996) ("in case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."). In light of defense counsel's strategy, the Court rejects this claim.

Next, Petitioner argues that his trial counsel was ineffective because he failed to cross-examine and impeach Ms. Mazza – the victim and sole eyewitness – about a specific inconsistency in her testimony. In her initial statement to Detective Severino, Ms. Mazza stated it was <u>Petitioner</u> who opened the desk drawer and removed the envelope of money. But at trial, Ms. Mazza testified that <u>she</u> opened her desk drawer and removed the envelope. However, this point is inconsequential, and counsel's failure to cross-examine Ms. Mazza on this issue did not render counsel ineffective.

Petitioner's argument that trial counsel was ineffective because he called one witness who could not testify to anything beneficial, and another who, Petitioner claims, was ill-prepared is also without merit. Defense counsel called Michael Turturro to the stand to testify that Petitioner's brother, David, was one of his regular delivery-truck drivers. And defense counsel called David Cabezudo as an alibi witness to testify that Petitioner was working with him on the day in question. Because both decisions were strategic, this argument is meritless.

Defense counsel's examination of Mr. Turturro was not so

defective as to rise to the level of ineffective counsel. Specifically, defense counsel's redirect raised a possible hole in the testimony the prosecutor elicited from Mr. Turturro.[4] This demonstrates that counsel was prepared, thought out Mr. Turturro's testimony, and that Petitioner's objections are to strategy, and not preparation. And tactical decisions of who to call, and what questions to ask, even if ill-advised, do not render counsel ineffective. Likewise, trial counsel's examination and preparations of David Cabezudo were not so defective as to render counsel's assistance ineffective. The Court finds that "[a]t most, these alleged errors were minor mistakes, strategic errors, or tactical errors." Federal habeas corpus relief will not be granted upon such a showing. Baker v. Henderson, No. 85-CV-3969, 1987 U.S. Dist. LEXIS 6742, at *5, 6 (S.D.N.Y. July 28, 1987).

E.  Petitioner did not Receive Ineffective Assistance of Appellate Counsel[5]

_____

[4] The re-direct elicited that David Cabezudo normally keeps good records of the kind that listed Petitioner as his helper on May 14, 1999. The Prosecution, on cross, had argued that Mr. Cabezudo falsified the record in question.

[5] Petitioner also put forth two other arguments that do not merit discussion. Petitioner argued that appellate counsel was ineffective because he "failed to preserve and raise on direct appeal Ineffective Assistance of Trial counsel by virtue of Trial counsel's failure to use legal available citations to strengthen and support defendant's motion to set aside the verdict pursuant to C.P.L. § 330.30." This does not present a cognizable claim in a habeas petition and is denied. Moreover, the complete failure to bring a post-verdict motion – which is not the case here – is not even necessarily a basis for ineffective assistance. See, e.g., Wiltz v. Louisiana, No. 94-CV-30017, 1994 WL 286254, at *5

It is well established that counsel need not raise every nonfrivolous issue on appeal simply because a client suggests it "if counsel, as a matter of professional judgment, decides not to present those points." <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1982). <u>See</u> <u>also</u> <u>Abdurrahman</u>, 897 F.2d at 74. Further, there is a strong presumption that counsel used reasonable professional judgment and conducted himself accordingly. <u>See</u> <u>Clark v. Stinson</u>, 214 F.3d 315, 321 (2d Cir. 2000) (quoting <u>Strickland</u>, 466 U.S. at 689). Thus, to show that counsel's performance fell below the applicable standard, and was deficient for failure to raise an argument on appeal, a petitioner would have to show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Clark</u>, 214 F.3d at 322.

Petitioner argues that appellate counsel failed to raise all possible arguments. But as discussed above, counsel need not present every possible nonfrivolous argument simply because the client suggests it. Counsel's twenty-eight page brief to the Appellate Division raises eight arguments (inclusive of sub-

---

(5th Cir. 1994) (denying an ineffective assistance claim for failure to file a post-verdict motion of acquittal).

Petitioner also argued that "appellate counsel failed to identify which constitutional violations occurred when filing leave to appeal with the New York Court of Appeals." This conclusory statement is not cognizable as a basis for an ineffective assistance of counsel claim.

points).  Petitioner has not presented any evidence indicating that appellate counsel omitted significant and obvious issues while pursuing clearly and significantly weaker arguments.

Petitioner next claims that appellate counsel was ineffective for failing to raise and preserve the argument that trial counsel was ineffective because trial counsel failed to investigate and call Agnes Polite – a potential alibi witness.  This argument is without merit.  A decision whether or not to call a witness – even an alibi witness – is a strategic one.  <u>Perkins v. Comm'n. of Corr. Serv.</u>, 218 Fed. Appx. 24, 26 (2d Cir. 2007) (rejecting an ineffective counsel claim predicated on counsel's failure to call an alibi witness because the decision was strategic).  And "[g]enerally, the decision whether to pursue a particular defense is a tactical choice which does not rise to level of a constitutional violation."  <u>Jones v. Hollins</u>, 884 F. Supp. 758, 765 (W.D.N.Y. 1995), <u>aff'd</u>, 89 F.3d (2d Cir. 1995).  Thus any argument on appeal that trial counsel was ineffective for failing to call an alibi witness would have lacked merit, and therefore appellate counsel's failure to raise this claim does not rise to the level of ineffective assistance of counsel.

Finally, Petitioner argues that appellate counsel was ineffective because he failed to argue actual innocence.  The Court rejects this argument and finds that appellate counsel cannot be faulted for failing to raise this unmeritorious argument on appeal.

To the extent that Petitioner now argues his "actual innocence," the Court rejects any such claim.  On a claim of actual innocence, Petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  Additionally, this claim requires a petitioner to put forth "new reliable evidence that was not presented at trial." Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000) (citations and quotations omitted).  Petitioner has absolutely failed to make a showing of actual innocence.  The Court finds that even if this were a properly pleaded claim, this is not an extraordinary case that would support a claim of actual innocence – reasonable jurors could, and did, find Petitioner guilty beyond a reasonable doubt.  The Court thus rejects this argument.

III. A Certificate of Appealability is Denied

The Court will not issue a certificate of appealability in this case.  Petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C § 2253.  The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See Lucidore, 209 F.3d at 112 (2d Cir. 2000).

## CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           December 1, 2009